## IN THE OREGON TAX COURT

Hubert E. WALKER

*v.*

## DEPARTMENT OF REVENUE

(TC 2956)

William M. Keller, Keller & Keller, P.C., Portland, represented plaintiff.

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered March 12, 1991.

**CARL N. BYERS, Judge.**

This appeal concerns the value of a .4-acre of land in the City of Newport as of January 1, 1989. Although it is on a hill near the ocean, it is not view property. A brief history of its ownership is necessary to understand the issues before the court.

The subject property was once anticipated to become part of Baywood Manor Condominiums (Baywood). Baywood was to be built in four phases. Only the first phase, containing 10 units, was constructed. The subject property was to be the site of phase two. The developers of the project declared

bankruptcy in 1987 and certain investors holding mortgages on the undeveloped land became the real parties in interest. Plaintiff held a mortgage on the subject property. After the developers went bankrupt, plaintiff foreclosed on his mortgage. At the sheriff's sale, plaintiff bid $25,000, virtually all of his judgment. After the foreclosure, one of the developers continued to work with plaintiff and the other mortgage holders in an effort to sell all the remaining land. Those sales efforts were not successful.

The primary obstacle to selling the property is access. The only apparent access to the subject property is over a private road through phase one of Baywood. Plaintiff and the developer do not believe plaintiff has a legal right of access over that road. Defendant believes plaintiff does have access.

Plaintiff's real estate broker testified he has tried to sell the property but has been unsuccessful. He believes the property does have access problems and that is the reason it has not sold. The broker testified that if the property did not have an access problem he could easily sell it for $2 a square foot, or approximately $35,000. He has discussed the access problem with the Baywood unit owners but the negotiations were inconclusive.

Defendant's appraiser assumed there was no problem with access. He used comparable sales to estimate the value of the subject property. However, his final opinion of value of $26,250 relies wholly on the foreclosure sale price. He testified that if the property did not have access it would have less value, but he could not say how much less.

A city planner also testified for defendant that the City of Newport would issue a building permit. However, the witness acknowledged the city would issue a building permit even if the property did not have access.

Defendant asks the court to find the property has access by virtue of an express reservation in the Declaration of Unit Ownership. The Declaration was executed October 12, 1981, and recorded October 30, 1981. Four months earlier, the developer gave First Interstate Bank a mortgage on the phase one property. The mortgage, based on a metes and bounds description, does not mention any easement for the

remaining property. If the developer used the same legal description in the deed in lieu of foreclosure, there may well be a question of access.[1] The deed in lieu of foreclosure may have cut off any purported easement granted by the Declaration of Unit Ownership. *Penn Mut. Life Co. v. Nelson,* 170 Or 248, 132 P2d 979 (1943).

■■ The court recognizes there are possible solutions to the access problem, including a statutory process for obtaining an easement or way of necessity. *See* ORS 376.150 through ORS 376.180. However, the issue before the court is the true cash value of the subject property, not whether plaintiff can obtain access for the property. The evidence in this case establishes that plaintiff feels obligated to inform prospective buyers there is a problem with access. If interested, a buyer could have a lawyer read the documents and determine whether an access problem exists. The point is: Even if a buyer believes there is a right of access, the buyer will likely decline the property because of the potential for litigation. Thus, the question is not whether there is a right of access, but whether there is a perceived problem with the access. A cloud — even if mistaken — on the use of the property greatly affects its current true cash value. Defendant's appraiser recognized this in his appraisal report:

> "There is a possible market preception [sic] of questionable access. Market perception, even if proven false, can affect the sales price."

■ As a result, defendant's appraiser relied upon the foreclosure price. However, a foreclosure price under these circumstances is poor evidence of true cash value. Here, all of the debtors had declared bankruptcy. Only the land was left as security for payment of the debt. Since the land was the plaintiff's only hope of payment, prudently he would bid in the full amount of his judgment to avoid problems with junior lienholders or others. Under these circumstances, there is no way to adjust for the nontypical market conditions.[2] OAR 150-308.205-(A)(2)(c).

---

[1] Neither party produced a copy of the deed in lieu of foreclosure to First Interstate Bank.

[2] Plaintiff did not bid $25,000 for the property. He bid a judgment for $25,000. Since all of the debtors obligated on that judgment had declared bankruptcy, the judgment was worth only what could be realized from the security for the debt, *i.e.,* the subject property.

The court finds there is a perceived problem with access to the property. This perception greatly affects the true cash value of the property.

In these circumstances, it is difficult to determine the property's value. Certainly it has some speculative value in the marketplace. Although plaintiff claims the property has zero value, his complaint pleads $1,000. The court finds the true cash value of the subject property as of January 1, 1989, was $1,000. Costs to neither party.